# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| BRANDY BENTLEY, ) | Civil Action No. 2:20-cv-00064-MGB |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER** |
| v. ) | |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

In accordance with the provisions of 28 U.S.C. § 636(c); Rule 73 of the Federal Rules of Civil Procedure; and Local Civil Rule 73.02(B)(1), the parties in this case have consented to have a United States Magistrate Judge conduct all proceedings in this case. Based upon this consent, the case was referred to the undersigned for final disposition by Order of the Honorable R. Bryan Harwell, Chief United States District Judge, on July 8, 2020. (*See* Dkt. No. 22.)

Plaintiff Brandy Bentley ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration (the "Administration") regarding her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). For the reasons set forth below, the undersigned orders that the Commissioner's decision be reversed, and that the case be remanded for further consideration.

1

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was 28 years old on the alleged disability onset date of July 14, 2010. (R. at 47, 63, 798.) Plaintiff alleged disability due to a learning disability, severe depression, and an enlarged blood vessel on the right side of her brain. (*Id*. at 47, 63, 798.) She has past relevant work as dry cleaner/machine presser. (*Id*. at 2023−25.)

Plaintiff filed an application for DIB and SSI on February 21, 2013. (*Id*. at 47, 63, 798.) Her application for DIB was denied initially on September 16, 2013, and upon reconsideration on December 17, 2013. (*Id*. at 60, 77.) Her application for SSI was denied initially on September 16, 2013, and upon reconsideration on January 7, 2014. (*Id*. at 811, 826.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on January 16, 2014. (*Id*. at 93.) The hearing was held on December 22, 2015. (*Id*. at 876−910.) Plaintiff testified at the hearing, as did a vocational expert. (*Id*.) On February 24, 2016, the ALJ issued a decision and found that Plaintiff was not disabled. (*Id*. at 19−45.) The Appeals Council denied Plaintiff's request for review on March 8, 2017, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. (*Id*. at 8−12.) Plaintiff filed a civil action on April 12, 2017. (*Id*. at 1007.) On December 8, 2017, the Commissioner filed a motion to remand the case for further administrative proceedings. (*Id*. at 1005.) The Court granted the motion, and the Appeals Council issued an Order remanding the case. (*Id*. at 1004, 1011−14.)

A second hearing was held on December 7, 2018. (*Id*. at 1995−2041.) Plaintiff testified at the hearing, as did a vocational expert. (*Id*.) The ALJ issued another decision on March 6, 2019, again finding that Plaintiff was not disabled. (*Id*. at 914−62.) Plaintiff appealed the ALJ's decision. The Appeals Council denied this request, making the ALJ's

decision the Commissioner's final decision for purposes of judicial review. This civil action followed.

In making the determination that Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ's decision:

(1) The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

(2) The claimant has not engaged in substantial gainful activity since July 14, 2010, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

(3) The claimant has the following severe impairments: obesity; migraine headaches from angioma; lumber degenerative disc disease; carp[a]l tunnel syndrome, status post right hand surgery and left hand surgery to be scheduled; posttraumatic stress disorder (hereinafter PTSD), bipolar disorder, anxiety with agoraphobia, depression, and attention deficit hyperactivity disorder (hereinafter ADHD); and borderline intellectual functioning (20 CFR 404.152(c) and 416.920(c)).

The claimant has the following non-severe impairments: degenerative joint disease, shoulder; and degenerative disc disease, cervical spine.

The claimant has the following impairment that is not medically determinable: diabetes mellitus.

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can never climb ladders, ropes, and scaffolds; she can frequently balance, stoop, crouch, and crawl; she should avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dust and gas; she should avoid concentrated exposure to hazards, such as heights and moving machinery. The claimant is limited to 1-2 step tasks with a reasoning level of up to 2. In addition, she can sustain concentration, persistence and pace for 2-hour periods for 8 hours a day, 5 days a week.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7) The claimant was born on July 22, 1981 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8) The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from July 14, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*Id*. at 914−62.)

## APPLICABLE LAW

### I.    Relevant Statutory Law

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq*. "Disability" is defined in the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 423(d)(1)(A) (DIB context); 42 U.S.C. § 1382c(a)(3)(A) (SSI context).[1]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context).

The claimant bears the burden of proof with respect to the first four steps of the analysis. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Once the claimant has established an inability to return to his past relevant work, the burden shifts to the Commissioner to show that the claimant—considering his age, education, work experience, and residual functional capacity—can perform alternative jobs and that such jobs exist in the national economy. SSR 82-62, 1982 WL 31386, at *3 (1982); *Grant*, 699 F.2d at 191; *Pass*, 65 F.3d at 1203; *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016).

---

[1] "[T]he definition of disability is the same under both DIB and SSI. . . ." *Morgan v. Saul*, 9:19-cv-1390-BHH-BM, 2020 WL 3318630, at *1 n.1 (D.S.C. June 3, 2020) (citing *Emberlin v. Astrue*, No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

## II.    Standard of Review

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the Commissioner supported his findings with substantial evidence and applied the correct law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a de novo review of the evidence and requires that the court uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012); *Mascio*, 780 F.3d at 640; *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Dowling*, 986 F.3d at 383 (citing *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). It is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson*, 810 F.3d at 207 (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). In reviewing for substantial evidence, the court does not undertake to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hancock*, 667 F.3d at 472; *Arakas*, 983 F.3d at 95; *Dowling*, 986 F.3d at 383. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the reviewing court must defer to the ALJ's decision. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (citing *Hancock*, 667 F.3d at 472).

However, the court does not "reflexively rubber-stamp an ALJ's findings." *Dowling*, 986 F.3d at 383 (citing *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017)). An ALJ may not cherry-pick, misstate, or mischaracterize material facts. *Arakas*, 983 F.3d at 99 (citing *Lewis*, 858 F.3d at 869). Rather, ALJs "must 'build an accurate and logical bridge' from the evidence to their conclusions." *Id.* at 95 (quoting *Monroe*, 826 F.3d at 189).

## DISCUSSION

Plaintiff argues that the ALJ committed reversible error for several reasons. (*See generally* Dkt. No. 29.) First, Plaintiff contends that the ALJ failed to conduct a proper medical equivalency analysis of her migraine headaches at step three of the sequential evaluation process. (*Id*. at 15−20.) Plaintiff further contends that the ALJ: made no determination as to the frequency or severity of her migraine headaches when formulating her residual functional capacity ("RFC"); improperly considered revised Listing 12.05 when making his step three determination; failed to appropriately weigh the opinions of Plaintiff's treating physicians; and neglected to consider the amount of time Plaintiff would be off task in making his RFC determination. (*Id*. at 20−43.) The undersigned considers these arguments, below.

### I.　ALJ's Medical Equivalency Analysis

Plaintiff first argues that "[t]he ALJ did not conduct a proper Listing level equivalency analysis with regard to [her] migraine headaches" and that "[t]his error necessitates reversal and remand so that the ALJ can appropriately consider [Plaintiff's] migraine headaches." (*Id*. at 17.) More specifically, Plaintiff asserts that the ALJ evaluated Plaintiff's migraine headaches under Listing 11.03, when he "should have compared [her]

migraine headaches to Listing 11.02 to determine whether they were equivalent to the criteria of that listing." (*Id.*)

By contrast, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's migraine headaches did not equal a Listing and that the ALJ's reference to Listing 11.03 in his step three analysis does not compel remand because "the ALJ referenced relevant current listing's criteria and explained how they were not present on the facts of this particular case." (Dkt. No. 34 at 18−19.) The Commissioner further explains: "[t]he Commissioner does not dispute that the ALJ should apply the current version of all listings. However, here, the requirements of prior listing 11.03 and the current listing 11.02(B) and (D) are essentially the same." (*Id.* at 19.) The Commissioner then references certain record evidence in support of the ALJ's finding that Plaintiff's migraine headaches were not of Listing-level severity. (*Id.* at 19−26.)

The Listing of Impairments "is a catalog of various disabilities, which are defined by 'specific medical signs, symptoms, or laboratory test results.'" *Bennett v. Sullivan*, 917 F.2d 157, 160 (4th Cir. 1990) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). A claimant's impairment meets a Listing if "it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 404.1525(c)(3) (DIB context); 20 C.F.R. § 416.925(c)(3) (SSI context). Where a claimant's impairment is not described in the Listing of Impairments, the claimant may establish equivalency if the findings related to such impairment are at least of equal medical significance to those of a closely analogous listed impairment. 20 C.F.R. § 404.1526(b)(2) (DIB context); 20 C.F.R. § 416.926(b)(2) (SSI context). A claimant whose impairment meets or equals the criteria of a listing is automatically entitled to disability benefits,

regardless of her actual ability to work. 20 C.F.R. § 404.1520(d) (DIB context); 20 C.F.R. § 416.920(d) (SSI context).

There is no listing for migraine headaches. For claims arising prior to September 29, 2016, courts have generally considered Listing 11.03 (Nonconvulsive Epilepsy) to be the appropriate listing for determining the medical equivalence of a claimant's migraine headaches. *See Hill v. Berryhill*, No. 6:17-cv-3198-BHH-KFM, 2019 WL 2125453, at *16 (D.S.C. Jan. 14, 2019), *adopted in relevant part*, 2019 WL 1232634 (D.S.C. Mar. 18, 2019); *see also Worley v. Berryhill*, No. 7:18-cv-16-FL, 2019 WL 1272540, at *3 (E.D.N.C. Feb. 4, 2019), *adopted*, 2019 WL 1264870 (E.D.N.C. Mar. 19, 2019) (collecting cases). However, the Listings were revised effective September 29, 2016. *See* 81 Fed. Reg. 43048-01, 2016 WL 3551949 (July 1, 2016). In that revision, Listing 11.03 was eliminated and Listing 11.02 was updated to provide a single, consolidated Listing for epilepsy. *See id*. These revisions applied to "new applications filed on or after the effective date of the rules, *and to claims [] pending on or after the effective date*." *Id.* at 43051 (emphasis added). Because Plaintiff's claim was pending after the effective date of the revisions, (*see* R. at 1013−15, remanding Plaintiff's case to the ALJ for further proceedings on April 5, 2018), the ALJ was required to evaluate whether the findings related to Plaintiff's migraine headaches were of equal medical significance to those described in revised Listing 11.02.[2] *See Hill*, 2019 WL 2125453, at *16.

Nonetheless, the ALJ considered Listing 11.03 instead of Listing 11.02. (R. at 920.) In his March 6, 2019 decision, the ALJ stated:

> Since the listings contain no basis for evaluating migraine headaches, listing 11.03, regarding epilepsy, has been used as a guide for developing and

---

[2] It is undisputed that the ALJ should have compared Plaintiff's migraine headaches to Listing 11.02. (*See generally* Dkt. No. 29; Dkt. No. 34; Dkt. No. 35; Dkt. No. 36-1.)

9

>evaluating migraines. Medical records should contain an ongoing treatment relationship, information about the treatment history, a description of a typical episode and information about response to treatment. The claimant's history of migraines is well established. However, to determine severity, I looked to the totality of the medical records, and, in this case, the medical records do not evidence that the migraines meet or medically equal any of the listed impairments in this section. For example, while the claimant testified that she had headaches every day, all the time, when she goes to her primary care physician at Cornerstone Family Medicine, she rarely notes headaches as an issue (Exhibit 15F). She also tells her Pain Management doctor that her current medications are working well and she is able to play with her son outside and play kickball (Exhibit 7F). Contrary to the claimant's testimony of having constant headaches[,] treatment records frequently note no headaches or that the claimant denies headaches (Exhibits 33F, 28F, 24F, 22F, 17F and 15F).

(*Id.*)

Under the old Listings, Listing 11.03 required:

>nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least three months of prescribed treatment, with alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

*See Vandross v. Berryhill*, No. 8:16-cv-1915-RBH-JDA, 2017 WL 3328191, at *17 (D.S.C. July 18, 2017) (citing 20 C.F.R. Pt. 404, Subpt. P., App. 1 at § 11.03), *adopted*, 2017 WL 3311047 (D.S.C. Aug. 3, 2017). By contrast, revised Listing 11.02 reads:

>**11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:**
>
>A. Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment.
>OR
>B. Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.
>OR

10

C. Generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:

1. Physical functioning; or
2. Understanding, remembering, or applying information; or
3. Interacting with others; or
4. Concentrating, persisting, or maintaining pace; or
5. Adapting or managing oneself.

OR

D. Dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:

1. Physical functioning; or
2. Understanding, remembering, or applying information; or
3. Interacting with others; or
4. Concentrating, persisting, or maintaining pace; or
5. Adapting or managing oneself.

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 11.02. Based on the above, the ALJ failed to analyze Plaintiff's migraines in the context of the requirements of revised Listing 11.02. For example, the ALJ did not consider whether Plaintiff's migraine headaches met the revised frequency standards set forth in Listing 11.02. (R. at 920.)

The Commissioner argues that the ALJ's error in referencing Listing 11.03 is inconsequential because the evidence of record does not support a finding that Plaintiff's migraine headaches were so severe as to be medically equivalent to Listing 11.02. (Dkt. No. 34 at 19−26.) However, an ALJ's failure to consider a claimant's migraines in light of the revised requirements set forth in Listing 11.02 typically constitutes legal error that precludes meaningful judicial review of the ALJ's step three analysis. *See, e.g.*, *Brown v. Berryhill*, No. 6:17-cv-30390-DCC-KFM, 2018 WL 6928737, at *12 (D.S.C. Dec. 11, 2018), *adopted*, 2019 WL 95149 (D.S.C. Jan. 2, 2019) (finding that the ALJ should have

used the revised Listing 11.02 in analyzing the claimant's application and remanding on this basis); *Hill*, 2019 WL 1232634, at *4 (determining that remand was necessary where ALJ used Listing 11.03 instead of Listing 11.02 to determine if plaintiff's migraines medically equaled a Listing); *Franks v. Berryhill*, No. 6:18-cv-977-DCC-KFM, 2019 WL 2234457, at *11 (D.S.C. Mar. 7, 2019), *adopted*, No. 6:18-cv-977-DCC, 2019 WL 2233152 (D.S.C. May 22, 2019) (concluding that the ALJ's failure to discuss the plaintiff's alleged headache symptoms under the appropriate Listing precluded meaningful judicial review and required remand).

In this case, the record precludes the Court from finding that the ALJ's error was inconsequential. Contrary to the Commissioner's assertions, the record evidence does not necessarily support a finding that Plaintiff's migraine headaches could not medically equal Listing 11.02. For example, the record reflects a pattern of headaches dating back to 2010. (R. at 929−46, citing to Exhibits 2F, 4F, 5F, 7F, 9F, 11F, 13F, 14F, 15F, 22F, 25F, 29F, 33F.) The record also contains opinions from Plaintiff's physicians stating that Plaintiff's migraine headaches were frequent and would interfere with her ability to work. (Dkt. No. 29 at 19, citing to R. at 1841, 1844, 1848.) Plaintiff testified that she gets migraines three to four times a week. (R. at 2008.) When she gets a migraine, she must put on a heating pad and lay in the dark for about 30 minutes. (*Id*. at 2008−09.) Plaintiff testified to nausea and vomiting associated with her headaches. (*Id*. at 2010.) Opinions provided by Plaintiff's treating physician and treating pain management doctor corroborate this testimony. (*Id*. at 956−59.) Although the undersigned recognizes that the ALJ may not find all of this record evidence convincing and/or credible, the undersigned cannot conclude that the ALJ's error

at step three was inconsequential where such evidence exists, especially when the ALJ has not considered this evidence in connection with the applicable Listing criteria.

Indeed, this Court has held that "although [Listing 11.03] applied by the ALJ and revised Listing 11.02 are similar, they are not entirely the same, and because the ALJ did not apply the correct law, it would be inappropriate for the Court to do so in the first instance, as it is not this Court's role to engage in fact-finding, to weigh the evidence, or to otherwise substitute its judgment for that of the Commissioner." *Hill*, 2019 WL 1232634, at *4. In so holding, the Court specifically addressed the Commissioner's futility argument stating that "[a]lthough the Commissioner argues that remanding the case for a new Listings analysis would be futile, the Court finds remand necessary because it is outside the Court's role to determine in the first instance whether Plaintiff has an impairment that equals or exceeds in severity revised Listing 11.02." *Id*., at *4 n.2.

Based on the foregoing, the Court is constrained to reverse the Commissioner's decision and remand this case for further proceedings so that the ALJ may conduct his step three analysis of Plaintiff's migraine headaches under the correct legal framework. *See id*.; *see also Arakas*, 983 F.3d at 94 (citing *Pearson*, 810 F.3d at 207) (noting that judicial review by the federal courts in disability cases is limited to determining whether the Commissioner supported his findings with substantial evidence and applied the correct law). Having found that remand is necessary on this basis, the Court need not address Plaintiff's remaining allegations of error, as they may be rendered moot on remand. Nonetheless, the ALJ should, if necessary, take Plaintiff's additional allegations of error into account as part of the overall reconsideration of Plaintiff's claim upon remand.[3]

---

[3] As one such allegation of error, Plaintiff contends that the Social Security Administration does not have the power to apply a revised Listing to claims pending on the effective date of the revision. (Dkt. No. 29 at

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **REMANDED** for further proceedings.

**IT IS SO ORDERED.**

                                            MARY GORDON BAKER
                                            UNITED STATES MAGISTRATE JUDGE

July 9, 2021
Charleston, South Carolina

---

23−36.) The undersigned notes that this argument is incongruent with Plaintiff's assertion that that ALJ erred in using Listing 11.03, instead of revised Listing 11.02, when considering the medical equivalency of her migraine headaches. The undersigned further directs Plaintiff to the Court's July 19, 2018 Order on this point. *See Bentley v. Berryhill*, No. 2:17-cv-00948-RBH, 2018 WL 8054207, at *2 (D.S.C. July 19, 2018), *aff'd sub nom. Bentley v. Comm'r of Soc. Sec. Admin.*, 776 F. App'x 800 (4th Cir. 2019) (observing that courts are split on the issue and noting that "this Court, as well as other district courts, have observed that the revised version of Listing 12.05 should be applied on remand").